IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHINETTE Y. PINKNEY | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:24-cv-00849-PX |
| PRINCE GEORGE'S COUNTY, MD | * | |
| Defendant. | * | |

\*\*\*

**MEMORANDUM OPINION**

Pending in this race retaliation case is Defendant Prince George's County ("the County")'s, Motion for Summary Judgment. ECF No. 19. Plaintiff Chinette Y. Pinkney ("Pinkney") has responded. ECF No. 28. Finding no hearing necessary, *see* D. Md. Loc. R. 105.6, and for the following reasons, the motion is GRANTED.

## I.     Background[1]

Since 2000, Pinkney has worked for the Prince George's County Fire/EMS Department ("Fire Department"). ECF No. 28-3 at 9:15. She began her career as an Emergency Response Technician, was promoted to paramedic in 2009, and finally to Lieutenant paramedic in 2015. *Id*. at 9:16–10:15. Pinkney also worked in the Office of the Fire Marshal, where she stayed until she was reassigned to Fire Station 826 ("Station 826") in 2020. *Id.* at 11:1–18:19.

Shortly after her reassignment, Pinkney and another firefighter exchanged hostile words about the propriety of turning on lights in what is called the "bunk room," where fire personnel sleep between shifts. ECF No. 28-3 at 21:6–27:14. Pinkney reported the exchange to Battalion Chief Phil Bird. *Id*. at 28:2–3. Several months later, around October 11, 2021, Pinkney

---

[1] Except where otherwise noted, the following facts are undisputed and construed most favorably to Pinkney as the non-movant. *See The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 573 (4th Cir. 2010); *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 364 n.3 (D. Md. 2011).

encountered one of the firefighters who had been present in the bunk room during the first incident. *Id*. at 44:17–46:20.  The two women also had words about what had happened, which led Pinkney to believe that everyone at Station 826 was "ganging up against" her.  *Id*. at 59:5–14:

On November 1, 2021, the Station 826 captain posted a new "bunk room policy" to which Pinkney objected.  ECF No. 28-3 at 72:12–16.  Pinkney complained to Assistant Fire Chief, David Wilson, who ultimately rescinded the policy.  *Id*. at 78:22–79:9.  Six days later, on November 7, Pinkney filed an informal EEO complaint with the Fire Department's EEO Office alleging that she was the victim of "harassment and bullying."  ECF No. 19-4.  Although the EEO complaint does not specifically identify the alleged misconduct as race-based, Pinkney also told C.J. Mills, the EEO officer assigned to investigate the claim, that she believed the harassment was because she is "black."  ECF No. 28-3 at 87:2–7.

As part of Mills' due diligence, Mills briefed Fire Chief, Tiffany Green, about Pinkney's complaint "sometime later in November 2021."  ECF No. 28-10 at 103:13–15.  Mills could not recall if she had mentioned Pinkney's claims at an earlier meeting that month, and no other evidence suggests Chief Green knew of the EEO complaint before the end of November.  ECF No. 28-2 at 111:19–113:2.

During this same time frame, Pinkney applied for the civilian position of "Fire Inspector 3H" for the Fire Department.  ECF No. 28-9.  The County posted the vacancy on October 21, 2021, and accepted applications through November 4, 2021.  ECF No. 28-5.  Pinkney submitted her application on November 1.  ECF No. 28-9.  The position required, at a minimum, a high school diploma or its equivalent; a Fire Inspector III certification or "equivalent;" and at least five years of experience in "technical inspection and code enforcement work to include: interpreting and enforcing codes, ordinances, and regulations, investigating complaints, writing reports, and the

necessary knowledge, skills and abilities to perform the duties in the fire inspections in the areas of housing, zoning, boiler or business licensing." ECF No. 28-5 at 2.[2]

The job posting generated six qualified applicants including Pinkney. ECF No. 19-8. Because fewer than ten persons applied, Yolanda Smedley, the Fire Department's Human Resources Manager, recommended that the County forego formal interviews and choose from among the applicants based on their written submissions. ECF No. 28-10 at 114:14–18; *Id*. at 42:14–19. Smedley next reviewed the applicants and found Mark Smith to be "the most qualified candidate." ECF No. 19-7 at 2. Smith previously had served as a sworn officer in the Fire Department for nearly 25 years until his retirement in 2015. ECF No. 28-10 at 123:7–16; ECF No. 19-10 at 2. His last rank was that of Battalion Chief, two ranks above Lieutenant. ECF No. 19-14 at 6. None of the applicants possessed the Fire Inspector III certificate, but Smith and Pinkney had the requisite equivalent on-the-job experience. ECF 28-10 at 125:2–9; *Id*. at 147:9–19.

Smedley chose Smith based on his 25 years of prior sworn service and his experience as Battalion Chief. ECF No. 28-10 at 137:14–138:13; ECF No. 28-8 at 5; ECF No. 19-7 at 2. Smedley also relied on the added "business" advantage in choosing Smith—that because he was no longer a "sworn" officer, his selection as Fire Inspector, a civilian position, would not remove an active sworn officer from the Fire Department's current ranks. *See* ECF No. 28-10 at 125:10–18; ECF No. 19-14 at 5.

On November 24, 2021, Smedley forwarded her hiring recommendation for review and approval to Acting Deputy Fire Chief, Dwayne Bonnette, and Chief Green. ECF No. 19-12. The same day, Chief Green offered Smith the position, "contingent upon successful completion of a

---

[2] In August of that year, Pinkney applied for the same position and was not selected. ECF No. 28-3 at 92:3–6. She does not challenge that non-selection.

background investigation." ECF No. 19-13 at 1. He started work in January 2022. ECF No. 28-8 at 18.

On March 21, 2024, after exhausting administrative remedies, Pinkney filed suit in this Court, alleging against the County a single count of race-retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). ECF No. 1. Pinkney avers that the Fire Department did not hire her for the October 2021 Fire Inspector position in retaliation for her having filed an EEO complaint. ECF No. 1 ¶ 87. After the close of discovery, the County moved for summary judgment in its favor. ECF No. 19. For the reasons stated below, the Court grants the motion.

## II.     Standard of Review

Summary judgment is proper where the evidence viewed most favorably to the non-moving party fails to generate a genuine dispute on any material fact, thereby entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In responding to a proper motion for summary judgment," the non-movant "must present evidence of specific facts from which the finder of fact could reasonably find for him or her." *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835, 840 (D. Md. 2004) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986); *Celotex*, 477 U.S. at 322–23). The Court cannot weigh evidence or make credibility determinations. *Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary

judgment or for a directed verdict."). But neither must the Court credit "mere speculation" or the non-movant's attempts to build "one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Where a party's statement of fact is "blatantly contradicted by the record, so that no reasonable jury could believe it," the Court credits the record. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.    Analysis

The sole count of the Complaint alleges that the County did not select Pinkney for the Fire Inspector position because she had filed an EEO complaint. ECF No. 1 at 10; ECF No. 19-3 at 121–22, 124. Title VII prohibits retaliation against an employee who avails herself of Title VII's protections. *See Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019) (citation omitted). To succeed on this claim, a plaintiff must make a prima facie showing that (1) she engaged in activity protected under Title VII; (2) the employer took a materially adverse action against her; and (3) a causal connection exists between the two. *Id.* *See also Barbour v. Garland*, 105 F.4th 579, 589–90 (4th Cir. 2024). If the plaintiff makes such a showing, "the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its allegedly retaliatory action." *Barbour*, 105 F.4th at 589 (citing *Foster v. Univ. Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015)). If the defendant adduces such proof, the burden shifts back to the plaintiff to demonstrate that the stated reason was "not its true reason, but rather a pretext for retaliation." *Id.*

First, as to the prima facie case, the County does not meaningfully dispute that Pinkney's non-selection constitutes a materially adverse action. *See Vedula v. Azar*, No. TDC-18-0386, 2020 WL 5500279, at *13 (D. Md. Sept. 11, 2020) (noting that non-selection for a vacant position constitutes a materially adverse action for purposes of a retaliation claim). Nor does the County dispute that pursuing EEO remedies can amount to protected activity. *See* ECF No. 19-1. Rather,

the County more narrowly disputes that Pinkney had not complained about *racial* discrimination and so, the activity is not "protected" under Title VII. *Id*. at 10. The County bases this argument on Pinkney's EEO complaint which states only that she wished the "harassment and bullying," to stop. *Id*. Nonetheless, Pinkney testified that she told EEO Officer Mills at the intake interview that she believed she had been targeted because she is black. ECF No. 28-3 at 87:2–7. This alone generates a genuine dispute of fact as to whether Pinkney complained of race-based harassment such that the EEO complaint is protected Title VII activity.

The County next argues that no evidence supports a causal connection between the protected activity and Pinkney's non-selection. ECF No. 19 at 10–11. The County emphasizes the dearth of evidence that the hiring officials for the Fire Inspector position knew anything about Pinkney's EEO complaint, thus breaking any inference of causation. *Id*. Importantly, "no causal connection can exist between an employee's protected activity and an employer's adverse action if the employer was unaware of the activity." *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 336 (4th Cir. 2018) (citation omitted). *See also Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). For the employer to be considered "aware" of the protected activity, the employer must somehow learn that the plaintiff had engaged in a protected activity prior to taking adverse action against her. *Id.*

Although Chief Green was the ultimate hiring official, it appears that she relied on the advice and counsel of both Human Resources Manager Smedley and Assistant Chief Bonnette. ECF No. 19-12. No evidence suggests that any of them had known of Pinkney's protected activity as of November 24, 2021, when Chief Green extended the offer to Smith. Smedley, in fact, testified she had no knowledge of the EEO complaint at any point. ECF No. 19-7 at 2.

6

As for Chief Green, the record, at best, supports that Mills told her about Pinkney's EEO complaint toward the later part of November. ECF No. 28-10 at 103:11–106:16.[3] But no other evidence pins down when Chief Green may have learned about the complaint and what exactly she was told. *Id.* Because no evidence exists that any decisionmaker for the Fire Inspector position knew anything about Pinkney's protected activity, no rational fact finder could conclude her non-selection was retaliatory.

Pinkney, in response, emphasizes solely the close temporal proximity of the protected activity and her non-selection as sufficient for the trier of fact to infer retaliatory motive. ECF No. 28-1 at 16, 18, 21, 23. But absent any evidence that the employer knew of the employee's protected activities, mere proximity is not enough. *See Hooven-Lewis v. Caldera*, 249 F.3d 259, 273 (4th Cir. 2001) (employer must know of protected activities "before he or she can retaliate against them") (citation omitted). *See also Baqir v. Principi*, 434 F.3d 733, 748 (4th Cir. 2006) (rejecting close temporal proximity as sufficient for the prima facie case unless plaintiff can show employer was "aware of [plaintiff's] contact with the EEO Counselor or his filing of an administrative complaint at the time the alleged retaliation occurred."); *Gatebe v. Nelson,* No. 22-2127, 2024 WL 937079 at *3 (4th Cir. Mar. 5, 2024) (recognizing that plaintiff must show the relevant decisionmaker was aware of plaintiff's protected activity at the time the alleged retaliation occurred.). Because Pinkney has adduced no evidence that either the Human Resource Manager Smedley, Chief Green, or Assistant Chief Bonnette knew of her protected activity at the time they selected Smith for the position, Pinkney cannot make a prima facie case simply because the timing of her EEO complaint coincided with her application for the Fire Inspector position.

---

[3] Mills also acknowledged the possibility that she may have mentioned the complaint to Chief Green during their monthly meeting which took place on November 9, 2021, but has no independent memory of having done so. ECF No. 28-10 at 103:11–106:16. No other documents corroborate when, or even if, Mills specifically had discussed the EEO complaint in any detail with Chief Green.

Alternatively, the County rightly contends that even if Pinkney could make a prima facie showing, no evidence rebuts Smith's selection as legitimate and non-pretextual. ECF No. 19-1 at 11–12. The record, viewed most favorably to Pinkney, reflects that both Pinkney and Smith met the minimum qualifications. *See* ECF Nos. 19-9 & 19-10. Smedley chose Smith because of his 25-year tenure in the Fire Department and prior service as a Battalion Chief. ECF No. 19-7 at 2. Pinkney, for her part, adduces no evidence to the contrary. Although she emphasizes that she had more recent, hands-on experience, ECF No. 28-1 at 19, 21, Pinkney's personal view of her superior qualifications cannot supplant the employer's "discretion to choose among equally qualified candidates provided the decision is not based upon unlawful criteria," *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) (quoting *Wileman v. Frank*, 979 F.2d 30, 38 (4th Cir. 1992)).

Pinkney also suggests that the selection process was somehow deviant because the County neither interviewed the candidates nor showed "why [Smith] was deemed more qualified." ECF No. 28-1 at 19. To the contrary, the record demonstrates that the decision to hire without interviews was permissible under relevant written policy. ECF No. 28-10 at 114:14–19 (Smedley, testifying as a representative of the County, that the County can forego interviews with fewer than ten applicants); ECF No. 28-12 at 1, 3 (policy entitled "methods in filling vacant positions" stating that "whenever there are fewer than ten (10) employees eligible to compete for the current or anticipated position, the Director of Human Resources Management may . . . authorize the noncompetitive promotion" which includes selection without an interview). *See also* ECF No. 28-13. Pinkney generates no evidence to the contrary other than to make a textual argument that one of the relevant ordinances "deals with promotions" and is not applicable to new hires. ECF No. 28-1 at 19. But even if the Court accepts that the County may have applied regulations liberally

8

in this instance, nothing suggests they did so to retaliate against Pinkney.  Accordingly, because Pinkney has generated no evidence that the selection of Smith amounted to a pretext for retaliation, the Court grants summary judgment in the County's favor.

**IV.    Conclusion**

Based on the foregoing, the motion for summary judgment filed by Defendant Prince George's County, ECF No. 19, is GRANTED.  A separate order follows.


   March 9, 2026                                                            /s/
Date                                                     PAULA XINIS
                                                         United States District Judge

9